IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JERRY LEE LEWIS,

                        Plaintiff,

    v.

DANE ESSER, JUSTIN PEAK,
JASON GODFREY and JOHN DOE,

                        Defendants.

ORDER

14-cv-40-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se prisoner Jerry Lee Lewis is proceeding on claims that several correctional officers violated his Eighth Amendment rights by forcing him to walk in restraints that were too small for his body and using excessive force against him when he failed to comply with orders to stand and walk while wearing the restraints. For the last several months, plaintiff has been attempting to learn the names of three correctional officers that he says participated in the use of force. (Plaintiff was able to identify one officer by name, Dane Esser, but Esser has stated that he does not remember the other officers involved in the incident. Dkt. #20-1.)

After prison staff showed plaintiff photographs of officers working at the prison during the relevant time, plaintiff sought to amend his complaint to add Jason Godfrey, Justin Peak and Joseph Dresen as defendants. Dkt. #29. A few days later, he moved to withdraw his claims against Dresen because he no longer believed that Dresen was involved. Dkt. #35. However, he still wanted to pursue a claim against the unknown fourth officer and he asked the

1

court for instructions regarding how to proceed.

In an order dated August 18, 2014, I told plaintiff it was for him to decide how he wanted to litigate his case. However, I instructed defendants to explain the efforts they took to locate the log book for the Echo Unit (where the use of force occurred) because it was possible that the book could include clues about the officers involved. (Defendants had provided a declaration from the records custodian stating that she had been unable to locate the book.) In addition, I gave plaintiff an opportunity to identify any additional steps he wanted prison staff to take to help identify the remaining officer.

In response, defendants have submitted a declaration from the records custodian who explains that she looked in all the places where the log book was likely to be, including the sergeant station (where the log book is kept until it is filled), the security secretary's office (where the log book is sent after it is filled) and the storage room. In addition, she has spoken with several unit sergeants and asked for their assistance in locating the book for the relevant time period, but the book has not been found. Dkt. #42.

In his reply, plaintiff does not criticize the custodian's efforts to find the log book. Instead, he says he wants to "reexamine the photos and have access to the true names of the photos." Dkt. #43. Unfortunately, plaintiff does not explain what he means when he says that he wants "access to the true names of the photos." It may be that plaintiff is alleging that prison staff gave him the wrong name when he identified one of the pictures as an officer involved in the use of force. However, even if that is the case, giving plaintiff another photo array should be used only as a last resort. As I noted in the previous order, plaintiff has admitted that he "didn't get a solid look" at the third John Doe "because this staff

2

member stayed behind Plaintiff the whole time," dkt. #35 at ¶ 3, so the usefulness of photographs is limited at this point. Plaintiff does not address this problem in his latest filing.

It is not clear whether plaintiff is prejudiced by the absence of the third John Doe from the lawsuit because it may be that one or more of the other defendants could be held liable for any injuries that plaintiff sustained as a result of any constitutional violation that occurred. However, because the prison's failure to maintain adequate records is part of the reasons for this problem, prison staff should be required to take any reasonable actions necessary to uncover the identity of the last officer.

In one of his previous filings, plaintiff provided a general description of that officer: a "white male, approx. 5'6" to 5'8", 150 to 160 lbs., skinny build, sandy brown to blondish hair (short), no facial hair." Dkt. #35 at ¶ 2. To my knowledge, defendants have not yet made any efforts to determine whether anyone working on the day of the relevant incident (October 22, 2013) fits that description. Accordingly, I will give defendants an opportunity to research that issue and supplement their discovery responses. If more than one individual working on that day fits the description, defendants should use plaintiff's complaint as a guide to ask each of those officers whether he has any recollection of being involved in the incident. If none of the officers remembers the incident, defendants should give plaintiff a list of each name along with any other information they have that might help plaintiff identify the correct officer, including a photograph and the time that officer worked that day.

ORDER

IT IS ORDERED that defendants Dane Esser, Justin Peak and Jason Godfrey may have until October 15, 2014, to comply with the instructions in this order. Plaintiff may have until October 24, 2014, to file a notice with the court identifying the John Doe defendant or to file a renewed motion to compel. If plaintiff files another motion to compel, he should identify the specific actions that he wants defendants to take.

Entered this 2d day of October, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge